# UNITED STATES DISTRICT COURT

for

Eastern District of Washington

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 30, 2020

SEAN F. McAVOY, CLERK

U.S.A. vs.    Medina, Jr., Orlando Xavier    Docket No.    0980 1:20CR02012-SMJ-1

### Petition for Action on Conditions of Pretrial Release

COMES NOW Arturo Santana, PRETRIAL SERVICES OFFICER, presenting an official report upon the conduct of defendant Orlando Xavier Medina, Jr. who was placed under pretrial release supervision by the Honorable U.S. Magistrate Judge Mary K. Dimke, sitting in the Court at Yakima, Washington, on the 28th day of February 2020, under the following conditions:

**Standard Condition #1**: Defendant shall not commit any offense in violation of federal, state or local law. Defendant shall advise the supervising Pretrial Services Officer and defense counsel within one business day of any charge, arrest, or contact with law enforcement. Defendant shall not work for the United States government or any federal or state law enforcement agency, unless Defendant first notifies the supervising Pretrial Services Officer in the captioned matter.

RESPECTFULLY PRESENTING PETITION FOR ACTION OF COURT FOR CAUSE AS FOLLOWS:

**Violation #1**: Orlando Medina is alleged of being in violation of his pretrial release conditions by having committed an offense in violation of state law, by being arrested for fourth degree assault - domestic violence (DV) on March 24, 2020.

On February 28, 2020, the conditions of pretrial release supervision were reviewed and signed by Mr. Medina. He acknowledged an understanding of his conditions, which included standard condition number 1.

On Tuesday, March 24, 2020, per the Grandview Police Department report for incident number 20V1420, at approximately 4:52 p.m., Grandview police officer Pearce responded to a domestic call at                             Washington. Dispatch advised the reporting person (RP) said her sister told her to take the kids and she noticed her sister had marks and scratches on her neck, chest, and arms. The RP advised the altercation was physical, but the male had stopped hitting her sister.

Officer Pearce arrived on the scene accompanied by officers Gonzalez, Rubalcava, and Sergeant Glasenapp. When officer Pearce arrived, the RP was standing next to a vehicle and three children were inside the vehicle. He observed a female and male by the front door. The female was identified as YRR and the male was identified as Orlando X. Medina, Jr. The officers separated the male and female. Officer Gonzalez interviewed Mr. Medina, as officer Pearce interviewed YRR. Both parties involved refused medical aid. YRR and Mr. Medina, Jr. are married, have three children in common, and live together at                         .

YRR said the altercation began this morning due to Mr. Medina's girlfriend coming over to the house the previous night. YRR said one of her children pulled at Mr. Medina's shirt and YRR saw hickies on Mr. Medina's neck. YRR confronted Mr. Medina and the conversation escalated into pushing and shoving. YRR said Mr. Medina pushed her against the wall in the kitchen and the fight continued into the living room. YRR said Mr. Medina pinned her up against the couch in the living room and while on top of her, put his hands around her neck. She said she continued to try to fight back in self-defense. YRR said the fight went from room to room in the house. She said she was concerned for her children and had them hide in the back-left room. YRR said the fight continued throughout the day until right before law enforcement arrived. YRR said the altercation consisted of pushing, punching, and hair pulling. She said she called her sister, the RP, to come pick up the children because she was getting tired of her kids watching the altercation.

YRR said the RP called the police when she arrived and saw her injuries. She said she and Mr. Medina are married but separated. She said she does not care if Orlando is sleeping around, but she said it was disrespectful for Orlando to bring his girlfriend to the house and sleep with her while her children were there.

Officer Pearce observed a red mark on the right side of YRR's neck, scratch marks on her arms and chest, and some discoloration on her knuckles. The officer noticed YRR's eyes were watery, red, and bloodshot, but he did not observe petechiae in her eyes. YRR was crying upon the officer's arrival and during the interview. She said the discoloration around the base of her neck was natural and not a result of the altercation. Pictures were taken of her injuries. YRR agreed to provide a recorded audio statement which was taken by officer Pearce at approximately 5:06 p.m.

Mr. Medina said YRR, his wife, found hickies on his chest, got mad at him, and just started hitting him. He said the altercation lasted between 45 minutes to 1 hour prior to officer's arrival. Mr. Medina said YRR started punching him then he fell onto the floor where she started kicking and punching him some more. Mr. Medina said YRR kicked and punched him all over his body for about 15 to 20 minutes. He said the altercation occurred near the front door and in the living room. Mr. Medina said he did not defend himself and started recording the altercation. In the video, Mr. Medina can be seen sitting down on the couch. YRR points to scratches and marks on her hand, arms, and chest. She tells Mr. Medina he is going to jail. The situation escalates and YRR can be seen hitting Mr. Medina. When asked where YRR's injuries came from, Mr. Medina said they came from YRR hitting him.

Officer Pearce observed red marks on Mr. Medina's forehead, face and nose; pictures were taken of his injuries. Mr. Medina agreed to provide a recorded audio statement, which was taken by officer Gonzalez at approximately 5:05 p.m. Officer Gonzalez attempted to record the video of the altercation on Orlando's phone with his Grandview Police Department issued cell phone. The recording was later found to be done incorrectly and could not be attached to the case file.

In their statements, the altercation involving both YRR and Mr. Medina, escalated into a physical altercation earlier in the day, prior to Mr. Medina's recording, and then again right before police arrival. Mr. Medina was found to be the primary aggressor earlier in the day, and YRR was found to be the primary aggressor just prior to police arrival. Mr. Medina and YRR were both arrested for fourth degree assault - DV. YRR was read her Miranda Rights from officer Pearce's Grandview Police Department issued Miranda card at approximately 5:19 p.m. Officer Rubalcava read Mr. Medina his Miranda Rights from his Grandview Police Department issued Miranda card at approximately 5:20 p.m. Officer Pearce transported YRR and officer Rubalcava transported Mr. Medina to the Sunnyside City Jail in Sunnyside, Washington. YRR was cited (case XZ0132279) and booked first into the Sunnyside City Jail for Fourth Degree Assault - DV, in violation of Revised Code of Washington (RCW) 9A. 36.041.2. After YRR was processed, Orlando was cited (case XZ0132280) and booked into the Sunnyside City Jail for Fourth Degree Assault - DV, in violation of RCW 9A. 36. 041. 2, and officer Pearce cleared the call.

On March 25, 2020, Mr. Medina made an initial appearance in Yakima County District Court for case number XZ0132280. Mr. Medina was released from custody on his personal recognizance. A pretrial no contact order was signed protecting the victim, YRR

**Violation #2**: Orlando Medina is alleged of being in violation of his pretrial release conditions by having allegedly committed an offense in violation of state law, by being arrested for violation of a no contact order on March 25, 2020.

On February 28, 2020, the conditions of pretrial release supervision were reviewed and signed by Mr. Medina. He acknowledged an understanding of his conditions, which included standard condition number 1.

On March 25, 2020, per the Grandview Police Department report on incident number 20V1436, at approximately 3:49 p.m., in the City of Grandview, while working uniformed patrol as a fully commissioned police officer for the City of Grandview, dispatch advised officer Rubalcava of a lobby contact reference a no contact order violation. The reporting party/victim was identified as YRR. The officer spoke with YRR outside their facility. YRR stated this was in regard to her husband, Orlando Medina, violating the no contact order that was just put in place that day.

Re: Medina, Jr., Orlando Xavier
March 30, 2020
Page 3

Officer Rubalcava was familiar with both parties and was in fact the arresting officer for the fourth degree assault DV that led to the no contact orders filed between the two. YRR stated she was released from the Sunnyside City Jail around 12 p.m. that day. YRR stated she received a phone call from an unknown number at 11:59 a.m. She answered the phone call and immediately recognized Mr. Medina's voice. YRR stated she told him several times they should not be speaking with each other due to them both having a no contact orders between them. YRR stated he tried several times to apologize and tried to have her take him back. YRR terminated the call, immediately received two more phone calls from the same number, and received three messages at 12:06 p.m. Photographs were taken of the messages; the phone number was 509-596-2171. YRR stated at approximately 12:18 p.m., she received two messages from phone number 509-439-2296. YRR stated she recognized this phone number as Mr. Medina's. YRR stated soon after, at 12:22 p.m., she was called by this number again and did not answer. Officer Rubalcava took photographs of the call history and messages sent from both numbers. He called 509-596-2171, but received no answer. He called 509-439-2296, and a male's voice answered the phone. He recognized the voice belonging to Mr. Medina. The male identified himself as Orlando Medina. He asked Mr. Medina what happened that day with YRR. Mr. Medina stated he did not know what he was talking about and said he had not talked to her since the previous day. He asked Mr. Medina if he would be willing to come into the police department and provide the officer a statement. Mr. Medina immediately asked if he was going to be arrested. The officer advised Mr. Medina he wanted to get his side of the story so he could document it in his report. Mr. Medina stated he would come in as soon as he could find someone to drive him. Mr. Medina stated he was currently staying at Washington.

At approximately 4:56 p.m., Mr. Medina arrived at the police department. Information was relayed to officer Pearce. Officer Pearce immediately Mirandized Mr. Medina, and Mr. Medina stated he understood his rights. Mr. Medina ultimately ended up confessing that he in fact had contacted YRR at 12:22 p.m. that day in regard to an ankle monitor. Mr. Medina was advised he was under arrest; he was handcuffed without incident. Mr. Medina was transported and booked into the Sunnyside City Jail. Mr. Medina was charged with No Contact/Protection Order Violation DV, in violation of RCW 26.50.110.1, no further action was taken by the officer.

PRAYING THAT THE COURT WILL ORDER A SUMMONS

|  |  |
|---|---|
| by | I declare under the penalty of perjury that the foregoing is true and correct. |
|  | Executed on:    March 30, 2020 |
|  | s/Arturo Santana |
|  | Arturo Santana<br>U.S. Pretrial Services Officer |

PS-8

Re: Medina, Jr., Orlando Xavier
March 30, 2020
Page 4

THE COURT ORDERS

[ ]   No Action
[ ]   The Issuance of a Warrant
[X]   The Issuance of a Summons
[ ]   The incorporation of the violation(s) contained in this
      petition with the other violations pending before the
      Court.
[ ]   Defendant to appear before the Judge assigned to the case.
[X]   Defendant to appear before the Magistrate Judge.
[ ]   Other

_____
Signature of Judicial Officer

3/30/2020
_____
Date